Daniel B. Olmos (SBN: 235319)
NOLAN BARTON & OLMOS LLP
422 E Street
Davis, CA 95616
(650) 326-2980 (o)
(650) 327-9704 (f)

Attorney for Defendant
Brian Dempsey, Sr.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN ARTHUR DEMPSEY, SR.,<br><br>Defendant. | Case No. 2:16-cr-00119 MCE<br><br>**MOTION FOR BAIL REVIEW** |

Defendant Brian Dempsey, Sr., through his undersigned counsel, hereby moves for a review of the June 15, 2020, detention order issued by the Magistrate Court.

I.  Changed Circumstances

Mr. Dempsey appeared for his arraignment on June 15, 2020, just three days after he was extradited from the United Kingdom, where he had been in custody since January 2017 following his foreign arrest on the single charge in this case, 18 U.S.C. § 1001 (false statements involving international terrorism). There is no allegation in this case that Mr. Dempsey himself actually engaged in terrorism. At the time of the June 15, 2020, initial appearance, where the Government sought pretrial detention for Mr. Dempsey, Pretrial Services could determine *inter ali*a no suitable residence for Mr. Dempsey, nor could it identify a financially-responsible surety. The parties submitted on Pretrial

Services' detention recommendation at that time, and the Court ordered Mr. Dempsey detained. *See* Docket No. 16.

Since the June 15, 2020, arraignment and detention order, the defense, in collaboration with Mr. Dempsey's family, has arranged for a set of pretrial release conditions which it believes will reasonably assure the appearance of Mr. Dempsey as required, and which will not endanger the safety of the community. First, Mr. Dempsey's mother, Valerie Dempsey, and sister Bridgette Bertera, both of whom were originally contacted by Pretrial Services, are now willing to provide a residence for Mr. Dempsey at the family's home in West Sacramento where they live together. Moreover, Valerie Dempsey, the homeowner, is willing to secure a $150,000 bond with the equity in the property. These are not conditions which were available to Mr. Dempsey, Pretrial Services, or the Court at the initial appearance in June. Further, Mr. Dempsey's only son, Brian Dempsey, Jr., is also a local resident and is gainfully employed.

II.    Title 18 U.S.C. § 3585(b)

There is another important issue that is relevant to the Court's determination of whether there is a preponderance of evidence that Mr. Dempsey poses a flight risk under 18 U.S.C. § 3142. There is no dispute that the statutory maximum prison sentence Mr. Dempsey faces for a violation of 18 U.S.C. § 1001 is eight years. *See* 18 U.S.C. § 1001(a). Mr. Dempsey was arrested in January 2017 in the United Kingdom on a warrant from this case. Under the plain language of 18 U.S.C. § 3585(b), Mr. Dempsey is entitled to credits from the time of his original arrest, which means that he has already served almost one-half of the statutory maximum sentence for this crime.

Section 3585(b) reads:

> **(b) Credit for prior custody.**--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>     **(1)** as a result of the offense for which the sentence was imposed; or

> **(2)** as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

Here, Mr. Dempsey spent time in "official detention" in England "as a result of the offense for which the sentence was imposed" – assuming that a sentence is ultimately imposed in this case. By the plain language in section 3585(b)(1), Mr. Dempsey will be entitled to credits for the time he served in England, so long as that time "has not been credited against another sentence."

Section 3585 "does not define 'official detention.'" *Zavala v. Ives*, 785 F.3d 367, 371 (9th Cir. 2015). In *Zavala*, the Ninth Circuit interpreted the words "official detention" on a blank slate, beginning with the statute's plain language. *See id.* *Zavala* held that a defendant's time in ICE detention counts as "official detention" when ICE detained the person for the purpose of securing his presence at a criminal prosecution for which he later was prosecuted and sentenced (as opposed to ICE detention for removal proceedings). *Id.* at 371. *Zavala* noted that the official detention must be "as a result of the offense for which the sentence was imposed," and the "as a result of" language "denotes a causal relationship" between the offense and the detention. *Id.* at 371. *Zavala* gave the words "official detention" their plain meaning. *Id.* at 371-72.

Other circuits have also considered the meaning of "official detention." "'[O]fficial detention' means imprisonment in a place of confinement, not stipulations or conditions imposed upon a person not subject to full physical incarceration." *United States v. Insley*, 927 F.2d 185, 186 (4th Cir. 1991) (holding that a defendant wasn't in "official detention" while he remained free after sentencing, on an appeal bond with conditions) (quoting *United States v. Woods*, 888 F.2d 653, 655 (10th Cir. 1989)). "[O]fficial detention means incarceration." *United States v. Becak*, 954 F.2d 386, 388 (6th Cir. 1992) (holding that a defendant released under the Bail Reform Act, with conditions, is not detained for purposes of section 3585 credits).

The defense has located one published case involving facts similar to those in this case. The defendant was arrested in Italy and spent 451 days in custody before he was extradited to the United States. *United States v. El-Jassem*, 819 F.Supp. 166, 182 (E.D.N.Y. April 20, 1993). The defendant argued that he should be given 451 days' credit toward his sentence for that time; the district court ruled, "Defendant *will receive credit for time served in Italy* in accordance with United States federal lenient practice." *Id.* (italics added). The court didn't define "federal lenient practice," but in the next sentence noted that, under 18 U.S.C. § 3568 and the Supreme Court's decision in *Wilson*, the Attorney General would compute the credits for time served. *Id.*

In addition, the Bureau of Prisons (which has the actual authority to calculate credits in this matter) has issued a Program Statement, No. 5880.28, dated February 14, 1997, governing credits under section 3585.[1] Although this Statement is now decades old, the Ninth Circuit in the 2015 *Zavala* decision cited and applied this 1997 Statement, so it appears to be the most recent version. *See Zavala*, 785 F.3d at 372. The BOP Program Statement does not specifically mention "extradition," and its definition of "official detention" does not mention detention abroad. It defines "official detention" as "time spent under a federal detention order." *See* 257-page PDF at 40, Section 1-14F. But it also says that "qualified non-federal presentence time" includes time spent in non-federal presentence custody. *See* 257-page PDF at 35. But then when discussing credits under section 3585(b)(2), which also requires that the defendant was in "official detention," the Program Statement acknowledges that credits will be given for time spent in official detention as a result of any "foreign arrest," so long as the other requirements in section 3585(b)(2) apply. *See* 257-page PDF at 53.

//

//

---

[1] https://www.bop.gov/policy/progstat/5880_028.pdf.

III.     Conclusion

For the foregoing reasons, Mr. Dempsey seeks review of his original detention order, and seeks pretrial release under the Bail Reform Act.

Dated: August 10, 2020                    NOLAN BARTON & OLMOS, LLP


   */s/* Daniel B. Olmos
Daniel B. Olmos
Attorney for Defendant Brian Arthur Dempsey, Sr.