# E.R.

**CERTIFICATE ISSUED PURSUANT TO SECTION 70 OF THE**

**EXTRADITION ACT 2003**

Under Section 70 of the Extradition Act 2003, the Secretary of State hereby

certifies that the request from the United States of America, being a territory

designated by the Extradition Act 2003 (Designation of Part 2 Territories)

Order 2003 (SI 3334/2003 as amended) for the purposes of Part 2 of that Act,

for the extradition of Brian Arthur Dempsey is valid and has been made in the

approved way.

Date    4 October 2016

Signed    *Julian Gibbs*

Home Office



# United States
# Department of Justice



Washington, D.C., <u>September 13</u>_____, <u>2016</u>

**To all whom these presents shall come, Greeting:**

**Certify** That __Jason E. Carter_____ whose name is signed

to the accompanying paper, is now, and was at the time of signing the same,

Associate Director, Office of International Affairs, Criminal Division, U.S.

Department of Justice, Washington, D.C.

_____ duly commissioned and qualified.

**In Witness, whereof, I,**_____Loretta E. Lynch_____



Attorney General of the United States, have hereunto caused the Seal of the Department of Justice to be affixed and my name to be attested by the Director/ Deputy Director, Office of International Affairs, Criminal Division, of the said Department on the day and year first above written.

*Loretta E. Lynch*
Attorney General

By_____
Director/Deputy Director, Office of International Affairs,
Criminal Division

CRM-181
APR 98

## CERTIFICATION

I, Jason E. Carter, Associate Director, Office of International Affairs, Criminal Division, United States Department of Justice, United States of America, do hereby certify that attached hereto and prepared in support of the United States' request for the extradition of Brian Arthur Dempsey from the United Kingdom is the original affidavit of Jean M. Hobler, Assistant United States Attorney, Eastern District of California, sworn to on September 6, 2016, before the Honorable Kendall J. Newman, United States Magistrate Judge, with exhibits.

True copies of the original documents are maintained in the official files of the United States Department of Justice in Washington, D.C.


13 September 2016
Date

Jason L. Carter

Jason E. Carter
Associate Director
Office of International Affairs
Criminal Division
U.S. Department of Justice
Washington, D.C.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA        :

v.                                 :       **Criminal Number: 2:16-CR-00119 MCE**

BRIAN ARTHUR DEMPSEY, SR.      :

### AFFIDAVIT IN SUPPORT OF REQUEST FOR EXTRADITION
### OF BRIAN ARTHUR DEMPSEY, SR.

I, JEAN M. HOBLER, being duly sworn, state that:

1.      I am a citizen of the United States of America and a resident of the State of California.

2.      I graduated from the University of Arizona College of Law in May 2000. I was admitted to practice law in the State of California in 2001. From September 2008 to the present, I have been employed by the United States Department of Justice as an Assistant United States Attorney for the Eastern District of California. My duties are to prosecute persons charged with criminal violations of the laws of the United States. During my practice as an Assistant United States Attorney, I have become knowledgeable about the criminal laws and procedures of the United States.

3.      In the course of my duties, I have become familiar with the potential charges and evidence in the case of United States of America v. Brian Arthur Dempsey, Sr., criminal case number 2:16-CR-00119 MCE. On August 5, 2013, the Federal Bureau of Investigation (FBI) initiated an investigation into possible violations of Title 18, United States Code, Sections 956 (conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country) and

2339A (providing material support to terrorists). The investigation revealed:

- that in July 2013, BRIAN ARTHUR DEMPSEY SR. (DEMPSEY), a citizen of the United States and a prior resident of the State of California in the Eastern District, traveled with another person to Syria for the purpose of engaging in fighting;

- there is an ongoing conflict in Syria, with multiple groups engaged in violent, armed fighting;

- the groups include supporters of the government, secular rebels, and jihadist groups, some of which are designated as foreign terrorist organizations by the United States Secretary of State;

- foreign fighters from Western countries have been traveling to locations in Turkey, and then traveling to towns closer to the border where they enter Syria; and that

- on or about August 22, 2013, when interviewed by a Special Agent of the FBI, DEMPSEY lied about the purpose of his travel and the activities he engaged in while he was in Syria.

## SUMMARY OF THE FACTS OF THE CASE

4.    DEMPSEY is a 44 year old male[1] who until July 2013, resided in Sacramento, California. Witness interviews and evidence collected indicate that DEMPSEY and another individual, referred to here as "Person A," in or before July 2013, agreed to travel from Sacramento, California to Syria for the purpose of engaging in fighting in that country. In August 2013, DEMPSEY attempted to return to the United States, passing through the Fiomunco International Airport in Rome, Italy. In that airport, on August 22, 2013, a Special Agent of the FBI interviewed DEMPSEY pursuant to the investigation of United States federal crimes

---

[1] The defendant will turn 45-years old in September 2016.

including, Title 18, United States Code, Section 956 (conspiracy to kill, kidnap, or injure persons or damage property overseas) and Section 2339A (conspiracy to violate specific, enumerated crimes, including violations of Section 956), either of which could be charged in this District pursuant to Title 18, United States Code, Section 3238. During the interview, DEMPSEY claimed, among other things that:

- DEMPSEY and another person decided several months before to travel to Syria to "help refugees."

- DEMPSEY had no intent to fight in Syria when he traveled to Syria.

- DEMPSEY asked his brother to call the U.S. Department of State to be sure it was legal for him to enter Syria.

- DEMPSEY did not encounter any members of a terrorist organization or the Free Syrian Army in Azaz, Syria, where he generally resided during his time in Syria.

- There was no one in Azaz, Syria involved in fighting the Bashar al-Assad regime.

All of these statements were false.

## PROCEDURAL HISTORY OF THE CASE

### The Charging Process

5.      Under the federal laws of the United States, a criminal prosecution is commenced when a grand jury files an indictment. Institutionally, a grand jury, though an arm of the court, is an independent body composed of private citizens -- not less than 16 and not more than 23 people -- whom the United States District Court selects at random from the residents of the judicial district in which the court resides. The purpose of the grand jury is to review the evidence of crimes presented to it by United States law enforcement authorities. After independently reviewing this evidence, each member of the grand jury must determine whether

3

there is probable cause to believe that a crime has been committed and that a particular person committed that crime. If at least 12 jurors find that the evidence they have reviewed provides probable cause to believe that a particular person committed the crime, the grand jury may return an indictment. An indictment is a formal written accusation that charges the particular person, now a defendant, with a crime, identifies the specific laws that the defendant is accused of violating, and specifies the date and place where the charged crime occurred. The grand jury initiates the criminal prosecution when it files the indictment with the United States District Court. Thereafter, the clerk of the court, at the direction of a United States District Judge or Magistrate Judge, normally issues a warrant for the defendant's arrest.

6.    On June 23, 2016, a grand jury sitting in the Eastern District of California returned an indictment charging DEMPSEY with a criminal offense against the laws of the United States. This indictment was subsequently filed in the United States District Court for the Eastern District of California. It is the practice of the United States District Court for the Eastern District of California to retain the original indictment and file it with the records of the court. Therefore, I have obtained a copy of the indictment, certified as true and accurate, from the clerk of the court and have attached it to this affidavit as **Exhibit A.**

7.    On June 23, 2016, based on the indictment filed by the grand jury on the same date, and with the approval of the United States District Court for the Eastern District of California, Deputy Clerk J. Donati of the court signed an arrest warrant for DEMPSEY. Pursuant to Rule 9 of the Federal Rules of Criminal Procedure, the clerk of the court is the authority competent to sign arrest warrants and deliver them for execution to law enforcement authorities competent to make arrests. This function — to sign and deliver arrest warrants — also resides in, and is appropriately, customarily, and lawfully exercised by deputy clerks of the

4

court. In fact, in nearly every case in this district, a deputy clerk, and not the appointed clerk,

signs and delivers arrest warrants. It is the practice of the United States District Court for the

Eastern District of California to retain the original arrest warrant and file it with the records of

the court. Therefore, I have obtained a copy of the arrest warrant, certified as true and accurate,

from the clerk of the court and have attached it to this affidavit as **Exhibit B**.

**The Charges and Pertinent United States Law**

8.       The indictment charges in a single count that DEMPSEY committed the

following offense:

> False statement involving international terrorism, in violation of Title 18,
> United States Code, Section 1001, carrying a maximum penalty of 8 years
> imprisonment.

9.       The United States requests the extradition of DEMPSEY for this offense. The

offense is punishable under a statute that: (1) was the duly enacted law of the United States at the

time the offense was committed, (2) was the duly enacted law of the United States at the time the

indictment was filed, and (3) is currently in effect. The offense is punishable under United States

law by one year or more of imprisonment. I have attached a copy of the pertinent sections of the

relevant statute and the applicable penalty provision to this affidavit as **Exhibit C**.

10.      DEMPSEY is charged with making a false statement involving international

terrorism, in violation of Title 18, United States Code, Section 1001. Under United States law, it

is a crime to knowingly and willfully make a materially false statement in any matter within the

jurisdiction of the executive branch of the United States Government.

11.      To satisfy its burden of proof and convict DEMPSEY on this count, the

government, at trial, must establish beyond a reasonable doubt each of the following essential

elements:

(a)      DEMPSEY made a false statement[2] in a matter within the jurisdiction of the

Executive Branch of the Government of the United States;

(b)      DEMPSEY acted willfully;[3] that is, DEMPSEY acted deliberately and with

knowledge both that the statement was untrue and that his conduct was unlawful;

(c)      The statement was material to an investigation; that is, if believed, it had a

natural tendency to influence, or was capable of influencing, the agency's decisions or

activities; and

(d)      The offense involved international or domestic terrorism (as defined in Title

18, United States Code, Section 2331).[4]

**The Government's Evidence**

12.      As a general matter, DEMPSEY's travel to and physical presence in Azaz, Syria

can be established using his travel itinerary, a copy of his passport with entry and exit markings

---

[2] A defendant violates Title 18, United States Code, Section 1001 each time a false statement is made. If a document contains numerous false statements, the government need only prove one of the statements was false to obtain conviction. It is the practice of my office, as allowed by the law of the United States, to charge multiple false statements made in a single interview or document as one count as opposed to one count per each false statement made in a single interview or document.

[3] Under United States law, in order to establish a 'willful' violation of a statute, the government must prove that the defendant acted with knowledge that his conduct was unlawful. This does not require the defendant to know his conduct violated a specific statute.

[4] As used in this chapter – (1) "international terrorism" means activities that— (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; (B) appear to be intended ... to influence the policy of a government by intimidation or coercion; and (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum. Title 18, United States Code, Section 2331(1).

6

for Turkey and Syria, phone records, and DEMPSEY's own statements to his family and the FBI.

***DEMPSEY made False Statements to the FBI on August 22, 2013***

13. Special Agent Jason Fickett of the FBI will testify that on August 22, 2013, he interviewed DEMPSEY at the Fiomunco International Airport in Rome, Italy. SA Fickett identified himself as a Special Agent with the FBI at the beginning of the interview and DEMPSEY made the following false statements:

i. DEMPSEY and Person A decided several months before to travel to Syria to "help refugees."

ii. DEMPSEY had no intent to fight in Syria when he traveled to Syria.

iii. DEMPSEY asked his brother to call the U.S. Department of State to be sure it was legal for him to enter Syria.

iv. DEMPSEY did not encounter any members of a terrorist organization or the Free Syrian Army in Azaz, Syria, where he generally resided during his time in Syria.

v. There was no one in Azaz, Syria involved in fighting the Bashar al-Assad regime.

***DEMPSEY's August 2013 Statements were False and Known by Him to be False at the Time Made***

14. DEMPSEY's August 22, 2013, statements and representations were false when made, and known by DEMPSEY to be false. DEMPSEY's statements will be shown to be false, through a combination of his own later statements in a subsequent recorded interview in January 2014,[5] testimony from other witnesses, and documentary and computer evidence as described below:

---

[5] DEMPSEY was interviewed at the U.S. Embassy in Rome, Italy in a series of meetings on January 7 through 9, and January 11, 2014. Substantially all of the interview sessions were

i.        DEMPSEY intended before he left the United States to join groups

fighting in Syria. Specifically, DEMPSEY's intent to fight in Syria before he left the

United States will be established through use of his own, recorded, statement in January

2014, during which DEMPSEY admitted that he and Person A intended to fight in Syria

when they left the United States. Further, witness testimony will reveal that prior to

departing the United States, DEMPSEY told a witness that he wanted to go to Syria and

be a "freedom fighter" and tacitly acknowledged that although his stated itinerary was

only to Turkey, he intended to cross into Syria from there. Person A also said that he and

DEMPSEY would be going to Syria to fight and possibly die, while DEMPSEY was

present. Additionally, during the January 2014 interview with Special Agent Angela

Ruffcorn, DEMPSEY told the FBI that he had joined Ahrar al-Sham[6] in Azaz, Syria and

had engaged in fighting in conjunction with that group on at least two occasions while in

Syria. Forensic analysis of a computer used by DEMPSEY prior to his departure

corroborated that statement with evidence of online searches made relating to Ahrar al-

Sham.

ii.        DEMPSEY asked his brother *not* to contact anyone outside the family

regarding his intended activities in Syria. During DEMPSEY's January 2014 interview

---

recorded and his attorney was present via videoconference for the majority of the interviews; all
portions of the interviews cited herein were recorded with his attorney present via
videoconference. Prior to beginning the first interview on January 7, 2014, DEMPSEY was
advised of his right not to incriminate himself and to counsel, and was reminded of those rights
during subsequent interview sessions.

[6] Ahrar al-Sham is a group in Syria formed for the purpose of fighting the regime of Bashar
al-Assad. After DEMPSEY left Syria, publicly available information revealed that Ahrar al-Sham
reportedly had links to al Qaeda. DEMPSEY is not charged in the indictment with material support
for an al Qaeda linked group.

with FBI, DEMPSEY acknowledged that he "knew" his brother[7] was going to call the

"State Department," and that he believed his brother was trying to stop DEMPSEY from

crossing the border into Syria. Testimony from DEMPSEY's brothers will establish that

DEMPSEY did not want his plans shared with anyone outside of the family, and did not

want the U.S. Department of State or the FBI to know his whereabouts.

    iii.      In Azaz, Syria, DEMPSEY did in fact encounter members of the Free

Syrian Army and Ahrar al-Sham, as well as members of Jahbat al-Nusra and the Islamic

State of Iraq and the Levant (ISIL). The Free Syrian Army, Ahrar al-Sham, Jahbat al-

Nusra, and ISIL are, and were at the time of DEMPSEY's presence in Azaz, groups

involved in fighting in Syria. ISIL and Jahbat al-Nusra are designated foreign terrorist

organizations under United States law and, at least as to Jahbat al-Nusra, DEMPSEY was

aware of the group's terrorist status before he left the United States to travel to Syria.[8] As

established by publicly available information, Azaz, Syria was a rebel-held area at the

time DEMPSEY resided there, and it was populated largely by fighters aligned against

the Syrian government of Bashar al-Assad. Second, DEMPSEY's statement in January

2014, acknowledged that he had encountered members of the Free Syrian Army and

Ahrar al-Sham (which he in fact joined upon his arrival in Syria, according to his

statement), both groups were involved with fighting Bashar al-Assad.

---

[7] According to the testimony of DEMPSEY's brothers, Tom Dempsey and Jimmy Dempsey, both spoke with DEMPSEY on the day he crossed the border into Syria. While in his August 2013 interview, DEMPSEY identified the brother at issue as Jimmy, during his later interview in January 2014, he referred to "Tom" as the brother who told him (DEMPSEY) that the brother would call the U.S. State Department in an effort to stop him from entering Syria.

[8] DEMPSEY acknowledged in his January 2014 interview that before he left the United States, he knew of the group Jahbat al Nusra, in part because he had looked up the case of Eric Harroun, a U.S. citizen who had been prosecuted for joining Jahbat al Nusra in Syria.

iv.      DEMPSEY had indeed met people in Azaz who were in some way

involved in the fighting between the Assad regime and opposition groups, which

DEMPSEY admitted to during the January 2014 interview. Moreover, at the time

Dempsey was in Azaz, Syria, it was an area of conflict populated largely by various

groups opposing Bashar al-Assad's government. This information is publicly available

and can be presented by FBI and/or expert testimony at trial.

v.      DEMPSEY engaged in fighting in Syria on at least two occasions before

attempting to return to the United States in August 2013. He admitted this in his January

2014 interview. As discussed above, DEMPSEY also admitted to joining Ahrar al-Sham,

the group as for which research had been performed on DEMPSEY's computer before his

departure from the United States. Also of note, at the end of the August 2013 interview,

DEMPSEY inquired whether he would be arrested if he had fought in Syria.

15.      At the time DEMPSEY made the false statements to the FBI in August 2013,

DEMPSEY knew that the statements were untrue based on his personal knowledge and his

activities in Syria.

### The Defendant Acted Willfully

16.      As set out below, the evidence shows that DEMPSEY knew it was unlawful to lie

to the FBI. Prior to leaving the United States, DEMPSEY was employed as a peace officer with

the California Department of Corrections and Rehabilitation, California Youth Authority (CYA).

Witness interviews and personnel records from CYA revealed that DEMPSEY completed peace

officer basic academy through CYA in or about May 2001. As a peace officer, DEMPSEY was

charged with being knowledgeable about law and law enforcement investigations, including

California statutes which make it a crime to lie to a law enforcement officer in the course of an

10

investigation. It was also part of the expectations of his job that he would comply with the "Law Enforcement Code of Ethics," on and off duty, which specifically prohibits conduct such as obstruction of justice. The CYA code of conduct for its employees, including DEMPSEY, provided that employees would be terminated for making false or intentionally misleading statements to a public safety officer whether the employee was on or off duty. Based on his experience as a California peace officer, DEMPSEY knew that making false statements to law enforcement officers, such as FBI agents, is not lawful.

17.     DEMPSEY understood his underlying conduct, traveling to Syria to fight, to be unlawful, as indicated by his statement at the beginning of the August 22, 2013, interview: "I thought you guys would be talking to me but not until I got home," and his question at the end of the same interview: "If I did actually fight in Syria would I be arrested?" This knowledge provided a motive for DEMPSEY to provide false information to the FBI when interviewed in August 2013.

### The False Statements Were Material

18.     As to the materiality of the statements made, FBI personnel will testify that untruthful information provided by DEMPSEY in the course of an investigation into charges of material support for terrorism (Title 18, United States Code, Section 2339A) and conspiracy to kidnap, kill, or maim foreigners overseas (Title 18, United States Code, Section 956), if believed, would have had a natural tendency to influence, or would have been capable of influencing, the FBI's decisions or activities with respect to its investigation. Furthermore, the law does not require the government to show that the investigation was in fact adversely affected by the false statements, but merely that the statements, if believed, would have been capable of influencing the investigation.

11

*The False Statements Involved International Terrorism as Defined Under U.S. Law*

19.     The evidence outlined above will also be used to establish that the false

statements at issue involved international terrorism because all were related to the FBI's

investigation into international terrorism.

*The False Statements Involved a Matter within the Jurisdiction of the Executive Branch of the*
*Government of the United States*

20.     FBI records show that an investigation into DEMPSEY's travel to Syria to fight

in that country was opened by the FBI on or about August 5, 2013, out of the Sacramento,

California, office of the FBI. It was as a result of this Sacramento-based investigation that FBI

personnel in Rome, Italy, were alerted to DEMPSEY's airline travel through Italy, resulting in a

Special Agent of the FBI proceeding to the airport to meet DEMPSEY and interview him.

21.     As of August 22, 2013, the FBI was an agency within the executive branch of the

United States Government, being a subdivision of the United States Department of Justice,

headed by the United States Attorney General, who reports to the President of the United States.

FBI personnel are available to testify to the relationship between the executive branch of the

United States government and the FBI. The FBI is duly authorized to investigate matters

involving international terrorism, including Title 18, United States Code, Section 956.

22.     As documented by evidence discussed under the topic of the false statements

made by DEMPSEY, DEMPSEY traveled to Syria with the purpose of joining non-government

forces engaged in violently opposing the government of Syria, and fighting with those forces.

Engaging in violent acts against the nationals of any country is a violation of United States law,

Title 18, United States Code, Section 956. DEMPSEY did so to influence a government by

intimidation or coercion and did so in Syria, a location outside the territorial jurisdiction of the

12

United States. Thus, the FBI was duly authorized to investigate this case involving international terrorism as defined by United States law.

**Efforts to Arrest Fugitive**

23.     The indictment was returned on June 23, 2016. FBI personnel began following leads on the possible location of the defendant at that time. On or about July 15, 2016, the FBI received word that DEMPSEY had been located by law enforcement authorities in Derby, England, and was residing in that city at an unknown address. The exact location of DEMPSEY in the United Kingdom is known to the London Legal Attaché's Office of the FBI.

## DESCRIPTION OF THE FUGITIVE

24.     BRIAN ARTHUR DEMPSEY SR. is a citizen of the United States, born on September 11, 1971, in Daly City, California. He is described as a white male, with a height of 5 feet, 11 inches, a weight of approximately 220 pounds, with blue eyes and brown hair that is turning white.

25.     I have attached a photograph of DEMPSEY to this affidavit as **Exhibit D**. This photograph has been identified by Tom and Jimmy Dempsey, DEMPSEY's brothers, as a photograph of the person each knows as BRIAN ARTHUR DEMPSEY, SR. This photograph has also been identified by FBI Special Agent Angela Ruffcorn, who interviewed DEMPSEY in January 2014.

26.     I have also attached a copy of the fingerprints of DEMPSEY to this affidavit as **Exhibit E**. These fingerprints were obtained from the California Department of Justice, which acquired them as part of the employment process for DEMPSEY when he worked for the California Department of Corrections and Rehabilitation, CYA.

13

## CONCLUSION

27.     I have attached the following documents in support of this request for the

extradition of DEMPSEY:

      A.    Exhibit A is a certified copy of the indictment.

      B.    Exhibit B is a certified copy of the arrest warrant.

      C.    Exhibit C is a copy of the pertinent sections of the following statutes and

their penalties:

          Title 18, United States Code, Section 1001;
          Title 18, United States Code, Section 2331;
          Title 18, United States Code, Section 956;
          Title 18, United States Code, Section 2339A;
          Title 18, United States Code, Section 3238; and
          Rule 9, Federal Rules of Criminal Procedure.

      D.    Exhibit D is a photograph of DEMPSEY.

      E.    Exhibit E is a copy of the fingerprints of DEMPSEY.

[remainder of page deliberately blank]

14

28.     I have thoroughly reviewed the government's evidence against DEMPSEY and attest that this evidence indicates that DEMPSEY is guilty of the offense charged in the indictment.

Executed this ⎍ day of September 2016, at Sacramento, California, United States of America.

PHILLIP A. TALBERT
Acting United States Attorney

JEAN M. HOBLER
Assistant United States Attorney

Signed and sworn to before me this ⎽6⎽ day of September 2016, at Sacramento, California.

Kendall J. Newman
United States Magistrate Judge

15

# EXHIBIT A

# Indictment

1  PHILLIP A. TALBERT
   Acting United States Attorney
2  JOHN K. VINCENT
   JEAN M. HOBLER
3  Assistant United States Attorneys
   501 I Street, Suite 10-100
4  Sacramento, CA 95814
   Telephone: (916) 554-2700
5  Facsimile: (916) 554-2900

6  TARYN M. MEEKS
   Trial Attorney
7  U.S. Department of Justice
   National Security Division
8  Counterterrorism Section
   950 Penn. Ave., N.W.
9  Washington, D.C. 20530
   (202) 523-4162
10
   Attorneys for Plaintiff
11 United States of America

**FILED**

JUN 2 3 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

**SEALED**

I hereby certify that the annexed
instrument is a true and correct copy of
the original on file in my office.
ATTEST: **MARIANNE MATHERLY**
Clerk, U. S. District Court
Eastern District of California
By _____
                    Deputy Clerk
Dated 8/18/16

12
13          IN THE UNITED STATES DISTRICT COURT
14          EASTERN DISTRICT OF CALIFORNIA

15 UNITED STATES OF AMERICA,          CASE NO. 2:16 - CR - 119 MCE

16                    Plaintiff,       18 U.S.C. § 1001 – False Statement Involving
                                       International Terrorism
17          v.

18 BRIAN ARTHUR DEMPSEY, SR.

19
                    Defendant.
20

21

22                    I N D I C T M E N T

23      The Grand Jury charges:

24              BRIAN ARTHUR DEMPSEY, SR.,

25 defendant herein, as follows:

26      On or about August 22, 2013, during an interview with an agent of the Federal Bureau of

27 Investigation at the Fiomunco International Airport in Rome, Italy, defendant BRIAN ARTHUR

28 DEMPSEY, SR. did knowingly and willfully make and cause to be made materially false, fictitious, and

INDICTMENT                              1

1  fraudulent statements and representations in a matter involving international terrorism within the

2  jurisdiction of the Executive Branch of the Government of the United States, which statements and

3  representations were material to an investigation in the Eastern District of California then being

4  conducted by the Federal Bureau of Investigation.

5  **False Statement One** - BRIAN ARTHUR DEMPSEY, SR. stated that he and Person A traveled

6  from his home in the State and Eastern District of California to Syria in July 2013 for the

7  purpose of "helping refugees."

8  The statement and representation was false because, as defendant BRIAN ARTHUR

9  DEMPSEY, SR. then and there knew, he and Person A traveled to Syria not for the

10  purpose of helping refugees, but with the intent to fight in Syria.

11  **False Statement Two** - During the same interview, BRIAN ARTHUR DEMPSEY, SR. denied

12  that he went to Syria with the intent to engage in any fighting in Syria.

13  The statement and representation was false because, as defendant BRIAN ARTHUR

14  DEMPSEY, SR. then and there knew, he and Person A traveled to Syria with the intent to

15  fight in Syria.

16  **False Statement Three** - During the same interview, BRIAN ARTHUR DEMPSEY, SR. stated

17  that before he left the United States, he asked a relative to call the Department of State to be sure

18  it was legal for him to enter Syria.

19  The statement and representation was false because, as defendant BRIAN ARTHUR

20  DEMPSEY, SR. then and there knew, he actually asked the referenced relative not to

21  contact the United States Government regarding his intended activities in Syria.

22  **False Statement Four** - During the same interview, BRIAN ARTHUR DEMPSEY, SR. stated

23  that he had not encountered any members of a terrorist organization in Azaz, Syria, where he

24  generally resided during his time in Syria.

25  The statement and representation was false because, as defendant BRIAN ARTHUR

26  DEMPSEY, SR. then and there knew, while in Azaz, he had encountered members of al-

27  Nusra Front and the Islamic State of Iraq and the Levant ("ISIL"), both terrorist

28  organizations.

INDICTMENT                                      2

1   **False Statement Five** - During the same interview, BRIAN ARTHUR DEMPSEY, SR. stated

2   that there was no one in Azaz, Syria, who was involved in fighting the Assad regime while

3   BRIAN ARTHUR DEMPSEY, SR. lived there.

4       The statement and representation was false because, as defendant BRIAN ARTHUR

5   DEMPSEY, SR. then and there knew, while in Azaz he had encountered members of the

6   Free Syrian Army, al-Nusra Front, and ISIL, and had himself been associated with Ahrar

7   al-Sham, a group fighting in opposition to the Assad government.

8   All in violation of Title 18, United States Code, Sections 1001, 2331, and 3238.

9

10           A TRUE BILL.

11   **/s/ Signature on file w/AUSA**

12

13           FOREPERSON

14   PHILLIP A. TALBERT

15   Acting United States Attorney

16

17

18

19

20

21

22

23

24

25

26

27

28

INDICTMENT

*No.* _ _ _ _ _ _ _ _ _

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

## THE UNITED STATES OF AMERICA

*vs.*

### BRIAN ARTHUR DEMPSEY, SR.

## I N D I C T M E N T

**VIOLATION(S):**   18 U.S.C. § 1001 – False Statement Involving International Terrorism

*A true bill,*

_ _ _ _ /s/ _Signature on file w/ AUSA_ _ _ _ _ _ _ _ _
*Foreman.*

*Filed in open court this* _ _ _ _ _ 23 _ _ _ _ _ _ *day*

*of* _ _ _ JUNE _ _ _ _ , *A.D.* 20 16

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Clerk*

*Bail,* $ _ _ _ _ _ _ _ _ _ _ _ _ _

**NO BAIL WARRANT**

GPO 863 525

**United States v. Brian A. Dempsey, Sr.**
**Penalties for Title 18, United States Code section 1001**

VIOLATION:          18 U.S.C. § 1001 – False Statement Involving International Terrorism

PENALTIES:          Maximum of 8 years in prison; or
                    Fine of up to $250,000; or both fine and imprisonment
                    Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

# EXHIBIT B

# Arrest Warrant

AO 442 (Rev. 11/11) Arrest Warrant    Case 2:16-cr-00119-MCE *SEALED*    Document 8 *SEALED* (Court only)    Filed 06/23/16
Page 1 of 1

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**SEALED**

| United States of America | ) |
| v. | ) |
| Brian Arthur Dempsey, Sr. | )    Case No.    2:16-cr-00119-MCE |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant* | |

I hereby certify that the annexed
instrument is a true and correct copy of
the original on file in my office.
ATTEST: MARIANNE MATHERLY

Clerk, U.S. District Court
Eastern District of California
By_____
Deputy Clerk

Dated   8/10/16

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*    Brian Arthur Dempsey, Sr.

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint
☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:

Violation of 18 USC 1001 False Statements Involving International Terrorism

Date:    06/23/2016

/s/ J. Donati
*Issuing officer's signature*

City and state:    Sacramento, CA

J. Donati, Deputy Clerk
*Printed name and title*

| Return |
| --- |

This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____

at *(city and state)* _____ .

Date: _____

_____
*Arresting officer's signature*

_____
*Printed name and title*

# EXHIBIT C

# Relevant Statutes

**Title 18, United States Code, Section 1001 -- False Statements**

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

\* \* \*

(2) makes any materially false, fictitious, or fraudulent statement or representation;

\* \* \*

shall be . . . imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, . . .

**Title 18, United States Code, Section 2331 – Definitions**

(1) the term "international terrorism" means activities that—

(A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

(B) appear to be intended—
    (i) to intimidate or coerce a civilian population;
    (ii) to influence the policy of a government by intimidation or coercion; or
    (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

(C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum

\* \* \*

**Title 18, United States Code, Section 956 - Conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country**

(a) (1) Whoever, within the jurisdiction of the United States, conspires with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would constitute the offense of murder, kidnapping, or maiming if committed in the special maritime and territorial jurisdiction of the United States

shall, if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy, be punished as provided in subsection (a)(2).

\* \* \*

(2) The punishment for an offense under subsection (a)(1) of this section is—

    (A) imprisonment for any term of years or for life if the offense is conspiracy to murder or kidnap; and
    (B) imprisonment for not more than 35 years if the offense is conspiracy to maim.

\* \* \*

### Title 18, United States Code, Section 2339A - Providing material support to terrorists

(a) Whoever provides material support or resources or conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of section ...956...or in preparation for, or in carrying out, the concealment of an escape from the commission of any such violation, or attempts or conspires to do such an act, shall be . . . imprisoned not more than 15 years, . . . , and, if the death of any person results, shall be imprisoned for any term of years or for life. . . .

(b) Definitions.—As used in this section—

    (1) the term "material support or resources" means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials;
    (2) the term "training" means instruction or teaching designed to impart a specific skill, as opposed to general knowledge; and
    (3) the term "expert advice or assistance" means advice or assistance derived from scientific, technical or other specialized knowledge.

### Title 18, United States Code, Section 3238 - Offenses not committed in any district

    The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

**Federal Rule of Criminal Procedure 9:  Arrest Warrant . . . on an Indictment . . .**

(a) Issuance. The court must issue a warrant . . . for each defendant named in an indictment . . . The court must issue the arrest warrant to an officer authorized to execute it or the summons to a person authorized to serve it.

(b) Form.

(1) Warrant. The warrant must conform to Rule 4(b)(1) except that it must be signed by the clerk and must describe the offense charged in the indictment . . .

\* \* \*

# EXHIBIT E

# Fingerprints

SID/22501427 BCN/77810250009 ATJ/I025DEB042 BCN/ OPID/isoma
DREQ/2016/07/11 TREQ/11:28 RTE/ARCHIVE COPY

NAME/DEMPSEY,   BRIAN  A
SEX/M  EYE/BLU  HAIR/BRO  HEIGHT/511  WEIGHT/205  DATE OF BIRTH/09-11-1971  CDL/A4913844
SOCIAL SECURITY NUMBER/571839159  PLACE OF BIRTH/CA  CITY/DALY CITY
CITIZENSHIP/US

TYPE OF TRANS/APP  AORI/CA034025C  CAYASACRAMENTO
OCA NUMBER/DEWITT NELSON  FP DATE/01-25-2001  FP OFFICIAL/GORDON - CGORDON



APP CJIS/91000  APP TYPE/PEACE OFFICER/AUXILIARY  APP TITLE/YOUTH CORRECTIONAL COUNSELOR

APP LEVEL OF SERVICE/CA.FBI..FIREARM......
METHOD OF PAYMENT/ACC
FEES/0046  RETAIN/Y

ARCHIVE COPY
SID/22501427 SCN/77810250009 ATI/I025DEB042 BCN/ OPID/isoma
DREQ/2016/07/11 TREQ/11:28 RTE/ARCHIVE COPY

MNU/BIL-100138

APPLICANT ADDRESS/5700 MANZANITA AVENUE
CARMICHAEL, CA 95608
APPLICANT PHONE NUMBER/9163314864

AGENCY ADDRESS/4241 WILLIAMSBOURGH DRIVE 011
SACRAMENTO, CA 95823
MAIL CODE/03877
(916) 262-1321

AGENCY CONTACT NAME/CANDIUS GORDON
REPLY FBI CRM HIST/Y

LIVE SCAN ID/778
IMAGE MAKE/IDX
IMAGE PREPROCESSING/N

SOFTWARE REVISION/5.02
TABLES VERSION/003220253

***** END OF DOCUMENT *****

PROCESS FLAG/ 2001012511:01
OPERATOR ID/ NATMS  PROCESS DATE/ EWS FIM PROCESS